Matthew S. Parmet (CSB # 296742)
mparmet@brucknerburch.com
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Ste. 1500
Houston, Texas 77046
Telephone:   (713) 877-8788
Telecopier:   (713) 877-8065

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERALD GOODMAN, Individually and On Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON U.S.A. INC., a Pennsylvania corporation and a California citizen; and DOES 1-30, inclusive,<br><br>Defendants. | Case No. 3:17-cv-06649<br><br>**Plaintiff's Original Class and Collective Action Complaint for Damages (with Jury Demand)**<br><br>1. **Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*);**<br>2. **Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Order 16-2001);**<br>3. **Failure to provide compensation for missed meal and rest periods (CAL. LAB. CODE §§ 226.7, 512; IWC Wage Order 16-2001);**<br>4. **Violations of record keeping requirements (CAL. LAB. CODE § 226);**<br>5. **Misclassification penalties (CAL. LAB. CODE § 226.8);**<br>6. **Advising misclassification (CAL. LAB. CODE § 2753);**<br>7. **Waiting time penalties (CAL. LAB. CODE § 203);**<br>8. **Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200, *et seq.*).** |

**BRUCKNER BURCH PLLC**

**SUMMARY**

1. Plaintiff Jerald Goodman brings this lawsuit against Defendant Chevron U.S.A. Inc. ("Chevron") to recover unpaid overtime and other damages under the Fair Labor Standards Act ("FLSA) and California labor laws.

2. Chevron is in the business of providing safety personnel offering safety services to operators and other oil field services companies.

3. Chevron did not treat Goodman as an employee.

4. Chevron classified Goodman as an independent contractor for purposes of the Fair Labor Standards Act ("FLSA") and California law.

5. The nature of Goodman's working relationship with Chevron is that of an employer-employee relationship, and he is entitled to the benefits of an employee under the FLSA and California law.

6. Goodman worked overtime while working for Chevron.

7. Chevron paid Goodman a day rate.

8. Chevron did not pay Goodman a salary.

9. Chevron did not pay Goodman hourly and overtime.

10. Chevron misclassified Goodman and all day rate safety consultants as independent contractors.

11. Goodman and the other day rate safety consultant independent contractors are similarly situated for the purposes of the FLSA and California law.

12. Goodman seeks back wages, liquidated damages, attorney fees, costs, and all other remedies available under the FLSA and California law.

**JURISDICTION**

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves a federal question under the FLSA, 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

**VENUE**

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District

16. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because Chevron is headquartered in this District and Division.

**INTRADISTRICT ASSIGNMENT**

17. Chevron maintains its headquarters and principal place of business in Contra Costa County, California.

18. This matter is therefore properly assigned to the District's San Francisco or Oakland Divisions. Civil. L.R. 3-2(d).

**THE PARTIES**

19. Goodman worked exclusively for Chevron as an safety consultant from approximately January 2011 to October 2015.

20. Throughout his employment with Chevron, Goodman was paid a day rate with no overtime compensation.

21. Chevron classified Goodman as an independent contractor.

22. Goodman's consent to be a party plaintiff is attached as Exhibit A.

23. Goodman brings this action on behalf of himself and all other similarly situated workers, who were classified as independent contractors and paid by Chevron's day rate system, regardless of job title.

24. Chevron paid each of these workers a flat amount for each day worked.

25. Chevron did not pay these workers overtime for all hours that they worked in excess of 40 hours in a workweek, as required by the FLSA.

26. Goodman represents at least two classes of similarly situated co-workers.

27. Goodman represents a class of similarly situated day rate independent contractors under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA Class is defined as:

> **Safety consultants employed by, or working on behalf of, Chevron U.S.A. Inc. as independent contractors and working in the United States in the past three years who were paid a day rate.**

28. Goodman represents a class of similarly situated day rate independent contractors under the California Labor Code pursuant to Federal Rule of Civil Procedure 23. The California Class is defined as:

> **Safety consultants employed by, or working on behalf of, Chevron U.S.A. Inc. as independent contractors and working in California in the past four years who were paid a day rate.**

29. Collectively, the FLSA Class and California Class are referred to as the "Class Members."

30. Chevron is a foreign corporation organized under the laws of Pennsylvania.

31. Chevron maintains its headquarters and principal place of business in Contra Costa County, California.

32. Chevron is a citizen of both Pennsylvania and California.

33. Chevron may be served by serving its registered agent for service of process: **Corporation Service Company d/b/a CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Ste. 150N, Sacramento, CA 95833**.

34. Goodman is informed and believes, and thereby alleges, that at all relevant times Chevron and Defendants Does 1 through 30 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of all or some of the other defendants.

35. Goodman is informed and believes, and thereby alleges that, due to the relationship between Chevron and Defendants Does 1 through 30, that such persons or entities were joint employers for the purposes of the FLSA. *See* 29 C.F.R. § 791.2.

36. Goodman is unaware of the true names of Defendants Does 1 through 30, and so Goodman sues those defendants under said fictitious names. Goodman will amend this complaint to show the true names and capacities of such fictitiously named defendants after the same has been ascertained.

37. Because the true names of Does 1 through 30 are currently unknown to him, Goodman refers to all Defendants collectively as "Chevron" throughout this Complaint.

Bruckner Burch PLLC

Pl's Orig. Compl.   No. 3:17-cv-06649   - 4 -

**COVERAGE UNDER THE FLSA**

38. For at least the past three years, Chevron has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39. For at least the past three years, Chevron has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

40. For at least the past three years, Chevron has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

41. For at least the past three years, Goodman and the FLSA Class were engaged in commerce or in the production of goods for commerce.

42. For at least the past three years, Chevron treated Goodman and the FLSA Class as employees and uniformly dictated the pay practices to which Goodman and its other employees (including its so-called "independent contractors") were subjected.

43. Chevron's misclassification of Goodman as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

**FACTS**

44. Chevron is in the business of oil and natural gas exploration and production. *See* Chevron, Home, http://www.chevron.com/operations (last visited Nov. 17, 2017).

45. To do this, Chevron owns and operates properties across California.

46. Chevron is a publicly traded company

47. Every Chevron job site adheres to Chevron policies and procedures.

48. Chevron's safety consultants are treated by Chevron as independent contractors or consultants.

49. As a safety consultant, Goodman's primary job duties included implementing safety procedures, monitoring wellsite safety and testing, assisting in incident investigation and incident reporting, and completing daily safety reports.

50. Chevron relies upon its safety consultants to perform work integral to Chevron's operations.

51. Chevron created an employer-employee culture between it and its safety consultants.

52. Chevron determines the schedules worked by its safety consultants.

53. Chevron provides all the essential equipment and tools for its safety consultants to perform their jobs.

54. Chevron sets the rates of pay its safety consultants receive.

55. Chevron employs its safety consultants for extended periods of time.

56. Chevron employees direct its safety consultants.

57. Chevron has the ultimate authority to hire, discipline, or fire its safety consultants.

58. Chevron made the decision to treat its safety consultants as independent contractors, not as employees.

59. Despite requiring overtime work, Chevron does not pay overtime compensation to this district group of workers.

60. Neither does Chevron pay a salary to this distinct group of workers.

61. All the while, Chevron's safety consultants perform the same duties of an employee.

62. Chevron controlled all meaningful aspects of its safety consultants' jobs to ensure its strategic objectives were fulfilled.

63. Even though Goodman often worked away from Chevron's traditional offices without the presence of an in-person Chevron superior, Chevron still controlled all aspects of Goodman's job activities by enforcing mandatory compliance with Chevron's policies and procedures.

64. Chevron's safety consultants all perform the same or similar job duties that are integral to Chevron's business operations and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

65. The safety consultants worked similar hours and were denied overtime because of the same illegal pay practice.

66. Chevron's policy of treating its safety consultants as independent contractors violates the FLSA.

67. Even if Chevron treated these workers as employees, its day rate pay structure did not meet the salary basis test.

68. Goodman was economically dependent on Chevron during his employment.

69. Goodman and all other safety consultants had the same job duties regardless of whether they were hired directly by Chevron or through a staffing company.

70. If hired through a staffing company, Goodman and all other safety consultants had the same job duties regardless of which staffing company they were hired through.

71. Goodman and all other safety consultants were subject to the same pay practices regardless of whether they were hired directly by Chevron or through a staffing company.

72. If hired through a staffing company, Goodman and all other safety consultants were subject to the same pay practices regardless of which staffing company they were hired through.

73. Goodman and all other safety consultants were paid a day rate regardless of whether they were hired directly by Chevron or through a staffing company.

74. If hired through a staffing company, Goodman and all other safety consultants were paid a day rate regardless of which staffing company they were hired through.

75. Goodman and all other safety consultants were all not paid overtime regardless of whether they were hired directly by Chevron or through a staffing company.

76. If hired through a staffing company, Goodman and all other safety consultants were not paid overtime regardless of which staffing company they were hired through.

77. Goodman and all other safety consultants were classified as independent contractors based on the same Chevron policies whether they were hired directly by Chevron or through a staffing company.

78. If hired through a staffing company, Goodman and all other safety consultants were classified as independent contractors based on the same Chevron policies regardless of which staffing company they were hired through.

79. Because Goodman and Chevron's other safety consultants were misclassified as independent contractors by Chevron, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

80. Chevron day rate system violates the FLSA and California law, because Goodman and the other Class Members did not receive any pay for hours worked over 40 hours each week.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

81. Numerous safety consultants have been victimized by this pattern, practice, and policy, which are in willful violation of the FLSA.

82. Many of these safety consultants have worked with Goodman and have reported that they were paid in the same manner and were not properly compensated for all hours worked, as required by the FLSA.

83. Thus, from Goodman's observations and discussions with these safety consultants, he is aware that the illegal practices or policies of Chevron have been imposed on a distinct group of day rate workers.

84. These safety consultants all were classified as independent contractors, received a day rate, regularly worked in excess of 40 hours per week, and were not paid overtime compensation.

85. These safety consultants are victims of Chevron's unlawful compensation practices and are similarly situated to Goodman in terms of relevant job duties, pay provisions, and employment practices.

86. Chevron's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the safety consultants.

87. Thus, Goodman's experiences are typical of the experiences of the safety consultants.

88. The specific job titles or precise job locations of the various safety consultants does not prevent collective treatment.

89. Goodman has no interest contrary to, or in conflict with, the members of the FLSA Class and California Class. Like each member of the proposed classes, Goodman has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

90. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91. Absent this action, many Class Members likely will not obtain redress of their injuries and Chevron will reap the unjust benefits of violating the FLSA and California law.

92. Furthermore, even if some of the Class Members could afford individual litigation against Chevron, it would be unduly burdensome to the judicial system.

93. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

94. The questions of law and fact common to each of the Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether Chevron employed the Class Members within the meaning of the FLSA and California law;

   b. Whether the Class Members were exempt from overtime;

   c. Whether Chevron's decision to not pay overtime to the Class Members was made in good faith; and

   d. Whether Chevron's violation of the FLSA and California law was willful.

95. Goodman's claims are typical of the Members. Goodman and the Class Members have sustained damages arising out of Chevron's illegal and uniform employment policy.

96. Goodman knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

97. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

98. All safety consultant independent contractors, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess

of 40 hours per week. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

### First Cause of Action—Violation of the FLSA

99. Goodman incorporates by reference all preceding paragraphs.

100. Chevron has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by employing day rate independent contractors in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such safety consultants for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

101. Chevron knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the day rate independent contractors overtime compensation.

102. Chevron's failure to pay overtime compensation to these safety consultants was neither reasonable, nor was the decision not to pay overtime made in good faith.

103. Accordingly, Goodman and all those who are similarly situated safety consultants are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### Second Cause of Action—Failure to Pay Wages Under California Law

104. Goodman incorporates by reference all preceding paragraphs.

105. The California Labor Code requires that all employees, including Goodman and the California Class, receive time and one-half overtime premium compensation for hours worked over 8 in one day. Cal. Lab. Code § 510 (2017); IWC Wage Order 16-2001.

106. Despite working over 8 hours a day as part of their normal and regular shift, Goodman and the California Class did not receive any overtime compensation for all hours worked over 8 in one day.

107. The California Labor Code also requires that all employees, including Goodman and the California Class, receive two times the overtime premium compensation for hours worked over 12 in one day. Cal. Lab. Code § 510 (2017); IWC Wage Order 16-2001.

108. Although Goodman and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

109. The California Labor Code requires that all employees, including Goodman and the California Class, receive two times the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Order 16-2001.

110. Although Goodman and the California Class regularly worked 7 days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over 8 worked on the seventh day.

111. This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Goodman and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

### THIRD CAUSE OF ACTION—
### FAILURE TO PROVIDE COMPENSATION FOR MISSED MEAL AND REST PERIODS

112. Goodman incorporates by reference all preceding paragraphs.

113. In accordance with the mandates of California Labor Code sections 226.7 and 512, and applicable IWC Wage Orders, Goodman and the California Class had the right to take two uninterrupted 30-minute meal periods for each day they worked 10 hours per day and a 10-minute rest period for every 4 hours worked per day. CAL. LAB. CODE §§ 226.7, 512; IWC Wage Order 16-2001.

114. Although the California Labor Code requires that all employees, including Goodman and the California Class, receive two, 30-minute meal-period breaks when employed for 10 hours per day, Goodman and the California Class did not receive two meal-period breaks for each day worked, despite working shifts of 12 hours or more. CAL. LAB. CODE § 512; IWC Wage Order 16-2001.

115. As a pattern and practice, Chevron did not provide Goodman and the California Class with meal-period breaks, and did not provide proper compensation for this failure as required by California law.

BRUCKNER BURCH PLLC

Pl's Orig. Compl.   No. 3:17-cv-06649   - 11 -

116. Although the California Labor Code requires that all employees, including Plaintiff and the California Class, receive a 10-minute rest period for every 4 hours worked, Goodman and the California Class did not receive any rest periods during their shifts of 12 or more hours. CAL. LAB. CODE § 512; IWC Wage Order 16-2001.

117. As a pattern and practice, Chevron did not provide Goodman and the California Class with rest-period breaks, and did not provide proper compensation for this failure as required by California law.

118. Goodman and the California Class are entitled to receive compensation, at their regular rate of pay, of one hour for each day they were denied their lawfully required meal- and rest-periods. CAL. LAB. CODE § 512; IWC Wage Order 16-2001.

119. Chevron's policy fails to provide Goodman and the California Class with the legally mandated meal period breaks. Such a pattern, practice, and uniform administration of corporate policy as described herein is unlawful and creates an entitled to recovery by Goodman and the California Class in a civil action, for the balance of the unpaid compensation pursuant to Labor Code sections 226.7 and 512, and applicable IWC Wage Orders.

**FOURTH CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS**

120. Goodman incorporates by reference all preceding paragraphs.

121. California Labor Code section 226 requires Chevron to keep accurate records regarding the rates of pay for their California employees and provide that information to Goodman and the California Class with their wage payment.

122. Because Chevron misclassified Goodman and the Putative Class Members as independent contractors, it did not maintain accurate records of Goodman and the California Class' daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Goodman and the California Class with their wages.

123. This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Goodman and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

**FIFTH CAUSE OF ACTION—MISCLASSIFICATION PENALTIES**

124. Goodman incorporates by reference all preceding paragraphs.

125. Chevron has maintained a uniform policy with respect to Goodman and the California Class hired by Chevron to work in California.

126. Under this uniform policy, Chevron has misclassified Goodman and the California Class as independent contractors.

127. Chevron, at all relevant times, retained control over the manner and means of accomplishing its desired business results, and retained control over its operations, such that an employer-employee relationship was created between Chevron and Goodman and the California Class.

128. Through its misclassification of Goodman and the California Class, Chevron has engaged in a pattern and practice of willful misclassification of its employees as independent contractors for its own financial benefit.

129. Goodman and the California Class are entitled to recover the civil penalties specified in the Labor Code for Chevron's violations of section 226.8 in an amount of not less than $10,000 and up to $25,000 for each violation, in addition to any other penalties or fines permitted by law.

130. Goodman and the California Class are entitled to recover their reasonable attorney fees and costs in bringing this action.

131. Chevron is subject to an order requiring it to provide public notice of its violation of California Labor Code section 226.8, if the Court determines that a violation has been committed. CAL. LAB. CODE § 226.8(e), (f).

**SIXTH CAUSE OF ACTION—ADVISING MISCLASSIFICATION**

132. Goodman incorporates by reference all preceding paragraphs.

133. Each Defendant, Chevron, and DOES 1-30, advised the other to treat the Class Members at issue in this case as independent contractors.

**SEVENTH CAUSE OF ACTION—WAITING TIME PENALTIES**

134. Goodman incorporates by reference all preceding paragraphs.

135. At all relevant times, Chevron was required to pay Goodman and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

136. As a result of Chevron's alleged California Labor Code violations, Chevron regularly failed to pay Goodman and the California Class their final wages pursuant to California Labor Code sections 201 to 204, and accordingly Chevron owes waiting time penalties pursuant to California Labor Code section 203.

137. The conduct of Chevron, in violation of Goodman and the California Class' rights, was willful and was undertaken by the agents, employees, and managers of Chevron.

138. Chevron's willful failure to provide Goodman and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

139. Therefore, Goodman and the California Class who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

### EIGHTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW

140. Goodman incorporates by reference all preceding paragraphs.

141. Chevron has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) meal- and rest-period break wages; and (4) accurate wage statements.

142. As a result of Chevron's failure to comply with federal and state law, Chevron has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

143. The relevant acts by Chevron occurred within the 4 years preceding the filing of this action.

144. On information and belief, Chevron has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*,

1  including those set forth above, depriving Goodman and the California Class of minimum working
2  condition standards and conditions under California law and IWC Wage Orders as set forth above.

3  145.  Goodman and the California Class are entitled to restitution for at least the following:
4  restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

5  146.  Goodman and the California Class are also entitled to permanent injunctive and
6  declaratory relief prohibiting Chevron from engaging in the violations and other misconduct referred
7  to above.

8  147.  Chevron is also liable for fees and costs pursuant to California Code of Civil Procedure
9  section 1021.5 and other applicable law.

## JURY DEMAND

148.  Goodman demands a trial by jury.

## RELIEF SOUGHT

149.  WHEREFORE, Goodman prays for judgment against Chevron as follows:

a. For an order certifying a class action under Rule 23 for the purposes of the claims under California law;

b. For an order certifying this case as a collective action for the purposes of the FLSA claims;

c. For an order finding Chevron liable for violations of state and federal wage laws with respect to Goodman and all Class Members covered by this case;

d. For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Goodman and all Class Members covered by this case;

e. For a judgment awarding Goodman and all Class Members covered by this case their costs of this action;

f. For a judgment awarding Goodman and all Class Members covered by this case their attorneys' fees;

g. For a judgment awarding Goodman and all Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

h. For all such other and further relief as may be necessary and appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***
    Matthew S. Parmet
    (CSB # 296742)
    mparmet@brucknerburch.com
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:   (713) 877-8788
Telecopier:   (713) 877-8065

**Attorneys for Plaintiff**

BRUCKNER BURCH PLLC

Pl's Orig. Compl.    No. 3:17-cv-06649    - 16 -