# Exhibit A

 **Cenergy International Services, LLC Consultant Agreement**

This Agreement is made and entered into this 04th day of January 2012 by and between **Cenergy International Services, L.L.C.** (hereinafter "CIS" or the "Company") and **Jerald Goodman**(hereinafter "Consultant").

**Recitals**

Whereas CIS is engaged in the business of furnishing professional service personnel to its customers in the petroleum exploration and production industry;

Whereas CIS desires to engage Consultant as an independent contractor to provide certain professional services (hereinafter the "Services") as may be requested by its customers (hereinafter "Customer"or "Customers") from time to time pursuant to certain master service agreements (hereinafter "MSA") between CIS and it Customers;

The parties hereby agree as follows:

## Independent Contractor Status

1.  Consultant hereby certifies that he/she is a properly trained and qualified **HES Field Rep** and that he/she holds all required training, licensure or other certifications and has the necessary work experience required for the performance of services in this profession, trade or occupation. CIS and Consultant hereby agree that Consultant is engaged by CIS as an independent contractor to perform the Services pursuant to this Agreement. In this regard, CIS and Consultant acknowledge and agree to the following:

(a.) CIS is only interested in the results obtained under this Agreement and the performance of the Services by Consultant to the satisfaction of its Customers. Consultant shall have control over the means, manner and method by which the Services are to be performed. CIS shall not be responsible for directing the day-to-day activities of Consultant while performing the Services. The means, manner and method by which the Services are to be performed shall be determined in accordance with Consultant's independent professional judgment. However, Consultant shall at all times be subject to the compliance obligations set forth in Paragraphs 7-11 below.

(b.) Consultant shall furnish all necessary personal tools and equipment to be used in the performance of the Services.

(c.) This Agreement shall be non-exclusive, such that Consultant shall have the right to perform professional services for other principals and clients during the term of this Agreement.

(d.) As an independent contractor Consultant shall be responsible for the payment of all state and federal income tax, social security, F.I.C.A., Medicare and other applicable taxes with respect to any compensation paid by CIS to Consultant pursuant to this Agreement. CIS will not make any tax withholdings from these payments and will issue an IRS Form 1099 to Consultant

reflecting these payments. Consultant shall be solely responsible for the payment of all taxes owed with respect to these payments. Consultant agrees to defend, indemnify, and hold CIS harmless from any claims by local, state or federal government authorities for any taxes owed as a result of the compensation payments made under this Agreement.

(e.) Consultant is responsible for maintaining and updating any required licensure, continuing education, technical certification and training, safety training and other certifications as may be required by federal, state or local law or by CIS Customers in order for the Consultant to perform the Services. Upon request Consultant will provide CIS with documentation verifying that Consultant is in compliance with any such required licensure, training or other certification requirements.

(f.) Consultant shall not be considered an agent of CIS for any purpose whatsoever and has no authority to assume or create any obligation or liability on behalf of CIS or to legally bind CIS in any manner whatsoever.

(g.) As an independent contractor Consultant is responsible for securing his/her own health, life, retirement and other benefits and understands and agrees that he/she is not eligible to participate in any CIS employee benefit plans.

(h) As a self-employed, independent contractor, Consultant understands and agrees that he/she is not eligible to receive unemployment insurance benefits in the event that a work assignment for a CIS Customer is terminated or in the event this Agreement is terminated.

## Term of Engagement and Termination

2. **Initial Term and Renewal**. The initial term of this Agreement shall be a period of one (1) year starting from the date of the execution of this Agreement by both parties. The Agreement shall automatically renew for an additional one (1) year period upon the expiration of the initial term, or any renewal thereof, unless either party provides written notice to the other party 30 days before the expiration of the initial term, or any renewal term, that the Agreement shall not be renewed.

3. **Termination for Cause**. Either party may terminate this Agreement immediately and without advance notice for cause in the event of a breach of this Agreement by the other party by providing written notice to the other party.

4. **Termination Without Cause**. Either party may terminate this Agreement without cause by providing 30 days written notice of their intent to terminate this Agreement to the other party.

## Services to be Performed by Contractor

5. **Nature of Consultant Services**. Consultant is hereby engaged as an independent contractor for the purpose of performing the Services, which shall generally consist of performing professional services as a **HES Field Rep** as requested by CIS Customers at job sites and locations requested by Customers. Consultant is not required to accept any particular

opportunity offered by CIS, but if Consultant agrees to perform certain Services Consultant shall be required to complete the Services required to the satisfaction of the Customer. CIS may offer certain Work Order assignments to Consultant but nothing in this Agreement shall require CIS to offer Consultant any specific number of assignments. The parties acknowledge that this Agreement is non-exclusive, such that Consultant may perform engineering services for other customers and clients and CIS may engage other consultants to perform professional services for its Customers.

6. **Consultant Performance.** Consultant agrees that while engaged in work for CIS Customers Consultant will perform the Services to the best of Consultant's ability, on a timely basis and in accordance with generally accepted industry and professional standards. In performing the Services Consultant is responsible for producing results that are satisfactory to the Customers of CIS.

### Compliance with HSE and Drug Testing Policies/Programs.

7. **HSE Compliance.** Consultant is required to perform the Services consistent with the health, safety and environment ("HSE") policies, procedures and requirements of the Customers. CIS has developed HS&E policies and procedures that incorporate the HSE requirements of its Customers and provides guidance for the safe completion of the Services.

8. **Controlled Substances Policy Compliance.** Consultant is required to perform the Services consistent with the drug, alcohol, drug/alcohol testing and worker search policies and procedures of the Customers ("Drug/Alcohol Program"). CIS has developed policies and procedures that incorporate the requirements of the Drug/Alcohol Programs of its Customers (CIS Alcohol and Controlled Substances Policy)." Consultant agrees to join, and shall at all times during the term of this Agreement remain enrolled in, Company's drug and alcohol compliance program. By executing this Agreement Consultant hereby agrees to submit to any drug or alcohol testing and searches of his/her person and property as may be requested by CIS or its Customers from time to time pursuant to the CIS Alcohol and Controlled Substances and Customer Policy Drug/Alcohol Programs.

### Compliance with Law and Ethics Requirements

9. **Compliance with Laws.** Consultant shall at all times perform the Services in accordance with state, federal and local laws, rules and regulations that are applicable or that may become applicable to the work being performed by Consultant, including, but not limited to, all laws pertaining to health, safety and environmental protection.

10. **Ethics Compliance.** Consultant acknowledges and agrees that Consultant shall be bound and abide by and strictly comply with both the letter and the spirit of the United States Foreign Corrupt Practices Act of 1977 and all amendments thereto as the same is from time to time in force in the United States of America; the Organization for Economic Cooperation and Development Anti-Bribery Convention and all other applicable anti-bribery and anti-corruption laws. Without limiting the foregoing, Consultant shall at all times perform the Services in an ethical manner and shall not accept money, gifts, favor or any other compensation for personal or professional gain for performance of the Services other than the compensation provided for in Paragraphs 12-13 of this Agreement. Consultant further agrees to refrain from making any

Version 3.0                                    3

payments, commission or kickbacks or giving any thing of value to any representative of the Customers, government officials or any other person for the purpose of influencing any decision, determination or other matter related to the Services performed for the Customers of CIS, including, but not limited to assignment of work to CIS or Consultant or approval of the Services performed by Consultant.

## Confidential Information

11. In the course of performing Services under this Agreement, Consultant will become knowledgeable with respect to confidential information regarding the operations, processes and procedures of CIS and its Customers which if revealed to the competitors of CIS and its Customers would cause irreparable harm. Accordingly, Consultant hereby agrees as follows:

   a. **Trade Secrets and Confidential Information**. Consultant hereby agrees not to disclose to anyone the trade secrets and/or confidential information of CIS or the Customers which are learned or acquired as a result of engagement Consultant pursuant to this Agreement. Such trade secrets and/or confidential information include, but is not limited to, technical and design information regarding any Services or customer project, Customer information (e.g., customer names, contact persons, addresses, requirements, credit information, pricing information and purchasing histories), customer lists, market studies and research, logs, well reports, seismic data, business opportunities and transactions, materials, drawings, designs, photographs, processes of manufacture, financial data, information regarding any CIS or Customer employees, marketing techniques, marketing strategies, business plans, sales methods, operating methods and techniques, operating and pricing policies, supplier information (e.g., supplier names, contact persons, addresses, pricing and supply histories), information regarding personnel and equipment used, business records of any type and any other information regarding CIS or Customer business or the Customer project or Services which is not known to the general public. Such confidential information or trade secrets may be written or unwritten and may be in electronic format and specifically includes, but is not limited to, any writings, reports or memoranda or documents of any kind prepared or received by Consultant in connection with his engagement to perform the Services.

   b. **Obligation to Maintain Confidentiality of Information.** Consultant will not at any time, both during and after the term of this Agreement, publish or disclose to any person, firm, corporation or other entity or use for Consultant's own benefit or that of any other person, firm or corporation or other entity, any trade secret or confidential information of CIS or the Customers and shall return to CIS and/or the Customers all such confidential information in his/her possession immediately upon the termination of the engagement by the Customer. If at any time Consultant is served with any subpoena or other legal demand or request to produce documents or testimony relating to any such trade secrets or confidential information, Consultant shall immediately notify CIS of such demand or request. Upon termination of this Agreement, all confidential information regarding CIS or its Customers held by the Consultant must be collected and returned to CIS. This includes all electronic and print versions of confidential information.

    c. **Intellectual Property Rights**. All ideas, improvements, new uses, know-how and inventions, whether patentable or unpatentable, that Consultant may make, conceive, invent or produce or reduce to practice while engaged in performing Services for the Customers ("Inventions") shall be the sole and exclusive property of CIS (and/or the Customer, if required by the MSA). Consultant will sign and execute all papers and do all acts necessary to assign and transfer to CIS (and/or its Customer, if required by the MSA) all rights, title and interest to said Inventions applications for patents or copyrights in the United States or in foreign countries and thereafter Consultant will do all things necessary to sustain such applications, patents and assignments.

    d. **Remedies.** Consultant acknowledges and agrees that any breach of the obligations set forth in this Paragraph 11 will cause CIS and its Customers to suffer irreparable harm not compensable through monetary damages alone and that CIS and its Customers may seek and obtain a temporary restraining order, preliminary and/or permanent injunction from a court requiring Consultant to abide by the terms of this Agreement, in addition to recovery of any monetary damages caused by any such breach. Consultant also agrees to pay the litigation costs, including reasonable attorney fees, incurred by CIS or its Customer in enforcing a breach of such proprietary information obligations in the event that any court or arbitrator determines that Consultant has breached these obligations.

## Consultant Compensation and Expenses

12.    **Compensation.**    CIS shall pay Consultant the daily or hourly rate of pay set by each Customer as reflected on Exhibit "A" attached to this Agreement. Consultant's rate of pay may be amended from time to time by CIS at the request of the Customer. Consultant shall only be paid for actual hours worked by the Consultant and for Services that produce results that are satisfactory to the Customer, as verified by a timesheet signed by an authorized representative of the Customer. Payment for actual Services performed by Consultant and approved by the Customer shall be the sole and exclusive compensation owed to Consultant and no other compensation of any kind shall be owed to Consultant. CIS will not withhold or pay any federal, state or local income or payroll tax of any kind on the Consultant payments. In order to receive payment for Services performed Consultant must submit an approved field service ticket timely.

13.    **Expenses.** CIS shall reimburse Consultant for expenses incurred by Consultant in the performance of the Services as authorized by the Customer under the terms of the attached Exhibit "A" for each Customer (hereinafter "Authorized Expenses").

## Insurance

14.    **Insurance.** CIS will be responsible for carrying worker's compensation insurance coverage and any other insurance coverage that is required by the Customer pursuant to the terms of the MSA covering the Services performed by Consultant pursuant to this Agreement. Consultant agrees to carry automobile liability insurance in the minimum amount of $25,000/$50,000/$25,000 and to furnish a certificate to CIS evidencing such insurance coverage.

## Merger of Negotiations

15. **Entire Agreement**. This Agreement and its attachments constitute the entire agreement between Consultant and CIS. There is no statement, promise, agreement or obligation in existence that may conflict with the terms of this Agreement or may modify, enlarge, or invalidate this Agreement or any provisions hereof.

## Assignment

16. **Assignment by Consultant.** The parties agree that this Agreement is personal to Consultant and cannot be assigned by without the written consent of CIS.

17. **Assignment by CIS.** CIS may assign this Agreement to any of its affiliated companies without the consent of Consultant. CIS shall provide written notice to Consultant advising of any such assignment.

## Amendment and Waiver

18. **General Amendment.** The provisions of this Agreement may be amended only by a written document signed by both Consultant and an authorized representative of CIS setting forth such alteration or amendment.

19. **Waiver of Breach.** CIS and Consultant agree that the failure to enforce any provision or obligation under this Agreement shall not constitute a waiver thereof or serve as a bar to the subsequent enforcement of such provision or obligation under this Agreement.

## Dispute Resolution

20. **Arbitration.** All claims, disputes or controversies arising out of, in connection with or in relation to this Agreement or the Services, including any and all issues of arbitration of such claim, dispute or controversy (hereinafter "Dispute"), and regardless of whether the Dispute is based or claimed to be based in whole or in part on a claim by either Party of breach of this Agreement shall be subject to the following dispute resolution procedure:

   a. Notice. In the event that a Dispute arises between Consultant and CIS, and/or between Consultant and a CIS Customer, Consultant shall immediately notify CIS of such Dispute in writing in order to provide CIS an opportunity to informally resolve the Dispute.

   b. Mediation. In the event that the informal dispute resolution efforts set out in 20 (a) above fail to settle the Dispute between Consultant and CIS within 30-days of such written notice the parties shall submit the Dispute to formal mediation which shall be conducted by the American Arbitration Association ("AAA") in Houston, Texas in accordance with the AAA Construction Industry Rules for Mediation then in effect.

   c. Arbitration. In the event that the mediation fails to settle the Dispute, then, subject to Article 20 (d) below, the Dispute shall be submitted to mandatory and binding arbitration conducted by the AAA in accordance with its Construction Industry Rules then in effect. Such arbitration shall be conducted before a single arbitrator in Houston, Texas. The arbitrator shall apply Texas law, exclusive of its principles of conflicts of laws for the

determination of the rights and remedies under the Agreement and for all aspects of the award hereunder, except to the extent that United States General Maritime law, exclusive of its principles of conflicts of laws governs the Dispute at issue. The Arbitrator shall have the power to award reasonable attorneys fees, costs and expenses to the prevailing party in any such arbitration proceeding.

d. <u>Joinder</u>. Consultant expressly agrees to be joined as a party in any arbitration between CIS and a CIS Customer or to have any arbitration between Consultant and CIS consolidated with any arbitration between CIS and a CIS Customer that arises out of, relates to or is in connection with any Services provided by Consultant and Consultant hereby waives any objection to such joinder or consolidation. In the event of such consolidation or joinder, the parties agree that such arbitration shall be conducted in accordance with the arbitration rules set forth in the applicable MSA and shall be governed by the choice of law set forth in the applicable MSA.

## **Survival of Covenants**

21. This Agreement shall be binding upon any successors of heirs or representatives of the parties hereto. The covenants and promises of the Consultant contained in this Agreement shall survive any termination of this Agreement by either party regardless of whether such termination is with or without cause, including the provisions contained in Articles 6, 11, 20, 22 and 23.

## **Governing Law**

22. To the extent that maritime activities are involved in the performance of this Agreement, then this Agreement shall be interpreted and construed in accordance with United States General Maritime law excluding any conflicts of laws principles which would direct the substantive law of another jurisdiction to apply. To the extent that Maritime Law is inapplicable, the laws of the State of Texas, exclusive of its principles of conflicts of laws, shall control the validity, construction and interpretation of this Agreement.

## **Indemnity**

23. Consultant shall be liable in any case of illness, injury or death to Consultant in any case of loss or damage to Consultant's property arising out of or relating to the Agreement or the performance of the Services under this Agreement and **REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY CIS or CIS CUSTOMER's NEGLIGENCE (INCLUDING ACTIVE, PASSIVE, SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING BREACH OF WARRANTY, BREACH OF AGREEMENT, STATUTE OR STRICT LIABILITY** and Consultant shall defend, protect, indemnify and hold harmless CIS, its parent, subsidiary and

affiliated companies and all of their officers, directors, employees and representatives and Customers from and against any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including reasonable attorney's fees) on account of such illness, injury, death, loss or damage.

## Severability

24.     If any provision of this Agreement is determined to be invalid by any court or arbitrator in a final decision from which no appeal is or can be taken such provision shall be deemed modified to eliminate the invalid element, and as so modified such provision shall be deemed a part of this Agreement. If it is not possible to modify any such provision to eliminate the invalid element, such provision shall be deemed eliminated from this Agreement. The invalidity of any provision of the Agreement shall not affect the force and effect of the remaining provisions.

## Notices and Written Consents

25.     All written notices and consents to be given by CIS to Consultant pursuant to this Agreement may be made either by personal delivery, by registered or certified mail, express mail delivery, facsimile or e-mail using the information provided by Consultant below. All written notice to CIS shall be made either by personal delivery, registered, certified or express mail, or facsimile as follows:

Cenergy International Services
Attn: June Ressler
1221 Lamar St
Suite 1110
Houston, TX 77010
Fax: 713-965-6204

Notice shall be considered communicated as of the date it is actually received. Consultant shall be responsible for providing CIS with current address and other contact information.

Agreed to this _4th_ day of _JAN_ 2012

IN WITNESSES WHEREOF, the undersigned parties have executed this Cenergy International Services Consultant Agreement on the date first written above.

_[signature]_                                        _1-4-2012_
**Signature of Consultant**                          **Date**

Jerald Goodman
**Print Name**


_____               _____
**Incorporated Name (if applicable)**         **FIN# (if applicable)**


A8639430                                      CA
**Consultant's Drivers License#**             **State of Issuance**


7509 Kimberly Ave                             Bakersfield, Ca 93308
**Consultant's Address**                      **City, State, Zip**


661-565-8606                                  661-978-2295
**Consultant's Home #**                       **Mobile #**


Jerald.goodman@yahoo.com
**Consultant's Email Address**


_[signature]_                                 _1-4-2012_
                                              **Date**
June Ressler
President / Cenergy International Services, LLC

## CENERGY INTERNATIONAL SERVICES, L.L.C.
## CONSULTANT AGREEMENT

### EXHIBIT A

I hereby agree to the terms of the contract and understand that additional expenses not mentioned in this exhibit must be agreed to by a company supervisor in writing. I also agree that the expenses and pay rate(s) on the Rate Card are subject to change pursuant to supervisor mandate.

_____   1-10-2012
Signature of Consultant       Date

Jerald Goodman
Print Name

HES Field Rep              Chevron SJVBU
Grid Job                   Company

### RATE CARD

| | Expense | Y/N | Amount/Unit |
|---|---|---|---|
| **Consultant Pay Rate** | Day Rate | $800/day up to 10 hours | |
| | Hourly Rate | $80/hr. for over 10 hours | |
| | Office Rate | $NA | |
| **Allowable Expenses** | Expense | Y/N | Amount/Unit |
| | Meals | Yes:☐ No:☒ | |
| | Hotel | Yes:☐ No:☒ | |
| | Per Diem | Yes:☐ No:☒ | |
| | Rental Car | Yes:☐ No:☒ | |
| | Parking | Yes:☐ No:☒ | |
| | Vehicle Allowance | Yes:☒ No:☐ | 11.50/hr good towards the use of a rental vehicle OR |
| | Airfare | Yes:☐ No:☒ | |
| | Mileage | Yes:☒ No:☐ | IRS Allowance for work related travel with the use of a mileage log |
| | Travel Day | Yes:☐ No:☒ | |
| | Cell Phone | Yes:☐ No:☒ | |
| | Other (define) | Yes:☒ No:☐ | H2S test is reimbursable |
| **Special Instances** | All other expenses must get prior approval from the Chevron Supervisor prior to expense. Consultant is responsible for the cost associated with PPE, D&A Test, physical, Passport training and anything else the client may require unless otherwise noted. | | |

Version 3.0                    10

Cenergy International Services
Attn: June Ressler
1221 Lamar St
Suite 1110
Houston, TX 77010
Fax: 713-965-6204

Notice shall be considered communicated as of the date it is actually received. Consultant shall be responsible for providing CIS with current address and other contact information.

Agreed to this 10th day of Jan. 2012

IN WITNESSES WHEREOF, the undersigned parties have executed this Cenergy International Services Consultant Agreement on the date first written above.

_____    1-10-2012
Signature of Consultant            Date

Jerald Goodman
Print Name


_____    _____
Incorporated Name (if applicable)   FIN# (if applicable)


A8639430                           CA
Consultant's Drivers License#      State of Issuance


7509 Kimberly Ave                  Bakersfield, Ca 93308
                                   City, State, Zip


661-565-8606                       661-978-2295
Consultant's Home #                Mobile #


Jerald.goodman@yahoo.com
Consultant's Email Address

_____    1/11/12
June Ressler                       Date
President / Cenergy International Services, LLC


Version 3.0                        9